## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHSETTS
### WESTERN DIVISION

| | |
|---|---|
| JOSEPH LALLI, | ) Civil Action No. 3:13-cv-30208-KPN |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GENERAL NUTRITION CENTERS, INC. | ) |
| and GENERAL NUTRITION CORP., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

General Nutrition Centers, Inc. and General Nutrition Corp. (collectively "Defendants" or "GNC") submit this Memorandum of Law in Support of Defendants' Motion to Dismiss.

## I.      INTRODUCTION

GNC utilizes the fluctuating workweek ("FWW") method of calculating some of its store managers' overtime entitlement under the Fair Labor Standards Act ("FLSA") and Massachusetts law.  Pursuant to this long-recognized method of complying with the FLSA, non-exempt employees receive a fixed salary as straight time compensation for all hours worked in a week regardless of the number.  If employees work more than 40 hours in a week, they receive overtime compensation by dividing their weekly salary by all hours worked in the week to get the "regular rate," dividing the "regular rate" in half, and paying the employees the resulting amount for each hour worked over 40.  In this manner, the employee properly receives one and one-half times his or her regular rate for each hour of overtime.  *See*  29 C.F.R. § 778.114; *Overnight Transp. Co. v. Missel*, 316 U.S. 572 (1942).

In addition to their weekly salary, GNC store managers can earn certain sales-based commissions.  This case raises the purely legal issue of whether GNC may use the FWW method

when its store managers can receive sales-based commissions in addition to a fixed weekly salary. Courts have long confirmed that this practice is proper under the FWW method. *See e.g.*, *Lance v. Scotts Co.*, No. 04 Civ. 570, 2005 WL 1785315 (N.D. Ill. July 21, 2005); *see also Wills v. Radio Shack*, ___ F. Supp. 2d ___, 2013 WL 5951078 (S.D.N.Y. Nov. 7, 2013). Specifically, performance-based compensation unrelated to the number or type of hours worked by an employee is entirely consistent with the FLSA, the United States Department of Labor ("DOL") interpretive guidance/regulation, and Supreme Court precedent.

Ignoring this overwhelming authority, Plaintiff Joseph Lalli ("Plaintiff") bases his claims on a DOL Final Rule published on April 5, 2011. (Complaint ¶ 28). His reliance, however, is misplaced. As the United States District Court for the Southern District of New York recently addressed at length in a decision dismissing a similar claim, the Final Rule did not alter the FLSA or the decades of FLSA jurisprudence, and did not change the FWW substantive interpretive bulletin in any way. *See Wills,* 2013 WL 5951078. In short, just as they always have done, GNC's pay practices comply with the FLSA and, since Massachusetts law comports with the FLSA, with Massachusetts law. Accordingly, even taking Plaintiff's factual allegations as true, his Complaint fails as a matter of law to state a viable claim and therefore warrants dismissal with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.     FACTUAL ALLEGATIONS

GNC sells health and wellness products in approximately 3,000 company-owned stores throughout the United States with approximately 70 stores in Massachusetts. (Complaint ¶ 16). Plaintiff Lalli worked as a GNC store manager from approximately August 2009 until January 2013. (Complaint ¶ 13).

B4218015.1

During the last three years, GNC has treated its store managers as non-exempt employees under the FLSA.  (Complaint ¶ 23).  GNC paid these store managers a fixed base salary for all hours worked each workweek plus overtime premium compensation for each hour worked over 40 in a workweek.  (Complaint ¶¶ 23, 24).  Under the FWW method, GNC compensated the store managers at straight time for all hours worked in the workweek with an agreed upon salary.  (Complaint ¶ 24).  It then determined its overtime obligation to employees who worked more than 40 hours in a week by: (1) dividing the employee's weekly salary by the total number of hours worked that week to get a "regular rate"; (2) dividing the "regular rate" by 2; and (3) paying that "half time" amount for each hour worked over 40.  (Complaint ¶ 24).  As permitted by the FWW, this method compensated employees at one and one half times their regular rate for overtime hours.

GNC store managers also may earn non-discretionary, sales based commissions in some workweeks.  (Complaint ¶ 25).  The amount of commissions varies from week to week and is based on the sales a store manager might make.  (Complaint ¶ 25).  The commissions are not tied to or otherwise related to the hours a store manager works.  (Complaint ¶ 25).  If a store manager earns sales commissions in a week in which he or she works overtime, GNC provides overtime premium compensation for any commission payment.  (Complaint ¶ 25).

Plaintiff alleges that an April 5, 2011 DOL Final Rule expressly rejecting any change to the FWW regulation, 29 C.F.R. §778.114, rendered GNC's previously proper pay practice incompatible with the FWW method of compensation.  (Complaint ¶ 28).  He also claims derivative violations of Massachusetts state law based on the alleged violation of the FLSA.  (Complaint ¶¶ 47-58).

### III.   LEGAL STANDARD

The standard of review for a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is well established.  To survive a motion to dismiss, the plaintiff must come forward with sufficient factual allegations that when taken as true demonstrate a plausible claim to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–558 (2007).  While "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." *Boroian v. Mueller*, 616 F.3d 60, 65 (1st Cir. 2010) (internal quotation marks omitted).   In other words, the plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Gorelik v. Costin*, 605 F.3d 118, 121 (1st Cir. 2010).

Although the Court should treat the factual allegations in the complaint as true for purposes of the Rule 12(b)(6) motion, it should not accept the plaintiff's "unsupported conclusions or interpretations of law." *Dix v. Shamrock Financial Corp.*, 522 F.3d 76, 79 (1st Cir. 2009); *see also Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("[The Court] should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action.")  Where the pleadings fail to state a cognizable claim, the Court should dismiss the complaint.  *See Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009).

### IV.   ARGUMENT

GNC's practice of paying sales-based commissions to some of its store managers in addition to their fixed weekly salary has long complied with the FWW method and the FLSA in general.  The DOL's April, 2011 Final Rule did nothing to change that fact.  Even if it had, it would not have been entitled to any deference.  Moreover, the Massachusetts Minimum Wage

4

Law permits the FWW method and must be interpreted the same way as the FLSA.  *See Valerio v. Putnam Associates, Inc.*, 173 F.3d 35, 39-40 (1st Cir. 1999); *see also Goodrow v. Lane Bryant, Inc.*, 732 N.E.2d 289 (Mass. 2000).  Accordingly, Plaintiff's claims fail as a matter of law and should be dismissed with prejudice.

**A.      GNC's Pay Practices Comply with the FLSA**

> **1.      The FWW Method Has Been a Recognized Way to Comply with the FLSA for 70 Years**

The FLSA requires employers to pay employees not otherwise exempt from its coverage overtime at "a rate not less than 1 ½ times the regular rate at which he is employed."  29 U.S.C. § 207(a).  An employer can meet this statutory obligation by utilizing the fluctuating workweek method for computing its employees' overtime entitlement.  *See* 29 C.F.R. § 778.114; *O'Brien v. Town of Agawam*, 350 F.3d 279, 287 (1st Cir. 2003) (noting that the FWW method is one of two approved methods for calculating the regular rate at which an employee is employed for overtime).  The United States Supreme Court first recognized the propriety of this method as a means to comply with the FLSA in its decision in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580-81 (1942).

Following the *Missel* decision, the DOL issued an interpretive bulletin recognizing the FWW method.  *See* 29 C.F.R. § 778.114.  The interpretive bulletin sets five conditions employers should satisfy in utilizing the FWW method:

> (1) the employee's hours fluctuate from week to week;

> (2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours the employee works during the week (excluding overtime premiums);

> (3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage;

(4) the employer and employee have a clear understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and

(5) the employee receives fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40 during that week.

*See O'Brien*, 350 F.3d at 288; *see also, Wills*, 2013 WL 5951078, at *8. As the United States Court of Appeals for the First Circuit has recognized, the FWW method involves situations where "a salaried employee whose hours of work fluctuate from week to week [reaches] a mutual understanding with his employer that he will receive a fixed amount as straight-time pay for whatever hours he is called upon to work in a workweek, whether few or many." *O'Brien*, 350 F.3d at 287.

In calculating the FLSA's "regular rate," an employer divides the actual number of hours worked in a given week into the total amount the employee is paid. *See Missel*, 316 U.S. at 580; *see also*, 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment by the total number of hours actually worked by him in that workweek for which such compensation is paid"). In Plaintiff's case, his regular rate includes his weekly salary plus any sales based commissions he might have earned. *See Missel*, 316 U.S. at 580; *Wills*, 2013 WL 5951078, at * 9; *Lance*, 2005 WL 1785315. Under the FWW method, therefore, an employee's fixed weekly salary must be divided by the total number of hours worked that week. *See Torres v. Bacardi Global Brands Promotions, Inc.*, 482 F. Supp. 2d 1379, 1380-81 (S.D. Fla. 2007). The weekly salary compensates the employee at straight time for all hours worked. *Missel*, 316 U.S. at 580-581; *O'Brien*, 250 F.3d at 288 ("[T]he fixed sum represents the employee's straight-time pay for the week, no matter how many hours the employee worked; the employer need only pay the 50% overtime premium . . . for hours after

6

40.”); *Torres*, 482 F. Supp. 2d at 1380-81; *Samson v. Apollo Resources, Inc.*, 242 F.3d 629 (5th Cir. 2001).  Therefore, the employer satisfies the FLSA’s one and one-half the regular rate overtime requirement by multiplying the regular rate by 50% and paying that amount for each hour worked over 40.  *See O’Brien,* 350 F.3d at 288.

> **2.** **Performance-Based Bonuses and Commissions Unrelated to Hours are Consistent with the FWW**

Performance-based bonuses and commissions are entirely consistent with the FWW method.  Numerous courts have considered the propriety of employers utilizing the FWW method while paying their employees a bonus or commission in addition to the fixed weekly salary.  *See Wills*, 2013 WL 5951078, at *9 (summarizing cases).  They uniformly have held that performance-based bonuses and commissions not tied to hours worked are permissible.  In contrast, courts have been more reluctant to approve of additional remuneration that is directly tied to hours worked.  *Id.*  As the *Wills* court recently noted, courts have made a “rational distinction between bonuses that turn on hours worked, and bonuses that do not, under which performance-based bonuses [are] uniformly consistent with the FWW.”  *Id.* at *10.  Thus, “so long as the bonuses and [commissions] are not tied to the number of hours worked by the employee, they [are] consistent with the [fixed weekly salary] requirement.”  *Id.* at *9.

The *Lance* court, for example, expressly held that paying sales-based commissions in addition to a fixed weekly salary comported with the FWW method.  *Lance*, 2005 WL 1785315 at * 5-6.  Other courts have come to the same conclusion.  *See Crumpton v. Sunset Club Properties, LLC*, No. 2:09-cv-680, 2011 WL 3269434, *4-5 (M.D. Fla. Aug. 1, 2011) (holding that base salary plus commissions were permissible under the FWW method); *Daniels v. Michiana Metronet, Inc.*, 1:09cv121, 2010 WL 1781017, *7 (N.D. Ind. May 3, 2010) (the parties agreed that the “fixed salary” requirement was met where plaintiff received fixed weekly salary

plus monthly commissions); *Clements v. Serco*, Inc., 530 F. 3d 1224, 1226 (10th Cir. 2008) (allowing the FWW method even though the employer paid commissions in addition to the base salary); *Perez v. Radioshack Corp.*, No. 2-cv-7884, 2005 WL 3750320, *5 (N.D. Ill. Dec. 14, 2005) (allowing performance-based incentive pay "as so long as commissions and bonuses are paid each month as a matter of course").

Additional pay tied to hours, however, presents a different matter.  Most courts have held that additional remuneration tied to hours, such as shift differentials, weekend premiums, and premiums for sea duty, results in employees receiving something other than a "fixed salary" *regardless of hours worked*.  *See Wills*, 2013 WL 5951078 at *8-9 (and cases summarized therein); *Brantley v. Inspectorate America Corp.*, 821 F. Supp. 2d 879, 889-90 (S.D. Tex. 2011) (distinguishing hours-based premium pay from "sales based or production-based bonuses and commissions"); *O'Brien*, 350 F.3d at 288 ($10 shift differential).  In such cases, the employees receive different pay depending on the type or number of hours they work, so the salary does not compensate them for all hours worked.  *Id.*

The court's discussion in *Soderberg v. Naturescape, Inc.*, No. 10 Civ 3429, 2011 WL 11528148 (D. Minn. Nov. 3, 2011) is illustrative of the difference between performance-based and hours-based additional remuneration.  In *Soderberg*, the plaintiffs claimed that they did not receive a "fixed salary" because they received "production and year-end bonuses."  *Id.* at *4.  In distinguishing performance-based incentives from hours-based pay, the court noted that hours-based pay, such as "hourly shift premiums and shift differentials" or extra pay for working "vacation days and scheduled days off," pays employees higher for some hours than other hours during a week.  *Id.* at *5.  Because the pay varied depending on when or where the hours were worked (*i.e.* on the weekends), the court held that the salary was no longer fixed regardless of

hours worked.  *See id.*  On the other hand, the court held that bonuses "based on criteria untethered to the hours," such as "individual and collective performance" resulted in the employee being "paid the same weekly salary regardless of the number of hours worked."  *Id.*  As a result, the court held that the "payment of performance-based bonuses [does] not preclude application of the FWW."  *Id.* at *4; *see also Wills*, 2013 WL 5951078, at *11 (discussing *Soderberg*).

### 3.    GNC Pays the Required "Fixed Salary"

In this case, Plaintiff disputes only whether GNC pays the required "fixed salary" necessary for the FWW method.  (Complaint ¶ 27).  Specifically, he erroneously asserts that GNC's payment of sales-based commissions in addition to a fixed weekly salary is not consistent with the FWW method. (Complaint ¶ 4).  Plaintiff's claim is wrong as a matter of law.

Plaintiff's Complaint does not allege that GNC pays its store managers anything other than a weekly salary plus any earned sales-based commissions.[1]  The store managers receive the same weekly salary regardless of the number of hours they work in that workweek.  The Complaint further admits that GNC utilizes the FWW method to divide total weekly remuneration (weekly salary plus sales-based commissions) by the total hours worked in the week, obtain the regular rate, and then pays an amount equal to 50% of the regular rate for each hour worked over 40 in the workweek.  (Complaint ¶ 24).  The Complaint only challenges GNC's provision of sales-based commissions in addition to the weekly salary.  (Complaint ¶¶ 4, 27).

---

[1] The Complaint utilizes the term "base pay" instead of a fixed salary, but does not allege that the store managers received anything other than a weekly salary in addition to the sales-based commissions.  To the extent that the Complaint fails to provide the specific factual nature of the "base pay" received by store managers, it does not comply with the pleading requirements outlined in *Twombly*, 550 U.S. at 555–558, and therefore merits dismissal.

B4218015.1

As case law makes clear, however, GNC's payment structure does not run afoul of the FWW's "fixed-salary requirement."  Performance-based commissions comport with the FWW method, and GNC's commissions are just that.  They are not tethered or otherwise tied to the hours an employee works.  Instead, they depend solely on the employee's performance—namely his or her ability to make certain sales.  Consequently, Plaintiff fails to state an FLSA claim.[2]

**B.      The DOL's 2011 Final Rule Did Not Purport to Change The Legal Landscape With Respect to Sales-Based Commissions**

Plaintiff's case rests entirely on a cherry-picked, out-of-context statement from the DOL's 2011 Final Rule.  (*See* Compl. ¶ 27 (citing 73 Fed. Reg. 43654)).  As courts have held, however, the DOL's 2011 Final Rule did not even address performance-based commissions and bonuses, let alone abrogate the long line of cases allowing them.  *See Wills*, 2013 WL 5951078, at *10.

The court's discussion in *Wills* is instructive.  2013 WL 5951078.  In *Wills*, the plaintiffs relied on the DOL's 2011 Final Rule to argue that their employer could not pay both performance-based bonuses and a base salary under the FWW method.  *See id*. at *1-3.  The court, however, held that the DOL's rule did not disturb the well-settled conclusion that performance-based incentive pay is permissible under the FWW method.  *See id.* at *10.  Specifically, the court reasoned that the DOL's 2011 Final Rule "had nothing to do with performance-based bonuses," and that the Final Rule merely confirmed that hours-based bonuses were prohibited under the FWW method.  *Id.* at 10.

---

[2] All the cases holding that bonuses and/or commissions are prohibited under the FWW deal exclusively with ***hours***-based bonuses and commissions.  *See e.g.*, *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2010 WL 1644066, *6-7 (D.N.J. Apr. 22, 2010) (FWW not allowed where employer paid day-off pay and holiday pay in addition the regular salary); *Ayers v. SGS Control Servs., Inc.*, No. 03 civ 9077, 2007 WL 646326, *9-10 (S.D.N.Y. Feb. 27, 2007) (same); *O'Brien v. Town of Agawam*, 250 F.3d 279, 288-89 (1st Cir. 2003) (payment of $10 night shift differential was inconsistent with the fixed salary requirement); *Dooley v. Liberty Mutual Ins. Co.*, 369 F. Supp. 2d 81, 05 (D. Mass. 2005) (payment of premium rate for Saturday work inconsistent with the FWW).

B4218015.1

The court analyzed the context surrounding the DOL's 2011 Final Rule. Specifically, the DOL issued a Notice of Proposed Rule Making ("NPRM") in 2008 to amend 29 C.F.R. § 778.114. The DOL actually proposed allowing employers to pay *hours*-based bonuses (*i.e.* extra pay for "undesirable shifts"). Specifically, the DOL wanted to "delete outmoded examples and eliminate confusion over the effect of paying bonus supplements and premium payments to affected employees." *Id*. at *11 (quoting Fed.Reg. at 43655–56). The DOL, for example, suggested adding a night-shift differential illustration to §778.114(b) to explicitly overrule the First Circuit's conclusion that hours-based pay was not allowed. *See Wills*, 2013 WL 5951078, at *12 (citing *O'Brien*, 350 F.3d 279). As a result, "viewed in context, the change that the DOL proposed was directed solely at establishing that payment of hours-based bonuses did not preclude use of the FWW." *Id.* at 12.

Ultimately, the DOL abandoned its proposed amendments. In 2011, the DOL issued a Final Rule: a statement in the Federal Register explaining why it chose ***not*** to amend § 778.114. *See Wills,* 2013 WL 5951078, at *11. While Plaintiff narrows in on one part of the DOL's statement, *i.e.* "the payment of bonuses and premium payments . . . are incompatible with the fluctuating workweek method of computing overtime," 76 Fed. Reg. 18,832 (Apr. 5, 2011), the *Wills* Court warned against reading this statement broadly:

> In explaining that decision, the DOL used broad language—which, taken out of context, can certainly be read . . . to preclude use of the FWW method where any form of bonus payment has been made. But the DOL's Final Ruling must be read in context. **Properly read, this Court concludes, it was not intended to, and does not, disturb the law permitting employers to use the FWW method to calculate the overtime pay of workers who receive performance bonuses.** Instead, the Final Ruling (at least as to § 778.114) is what it appears to be: a decision to maintain the status quo, both as to the text of the governing regulation and its application to different types of bonuses.

*Wills*, 2013 WL 5951078, at *11.  In fact, the *Wills* court correctly noted that the DOL did not

mention performance-based bonuses or commissions at all.  *See id.* at *13.  Thus, "had the DOL

actually intended to rule that both hours-based and performance-based bonuses would henceforth

preclude use of the FWW method, it is hard to imagine that the DOL would not, somehow, have

said so."  *Id.*  As a result, the court held:

> Accordingly, the DOL's Final Ruling, closely read, reveals an
> intention to leave in place the status quo, not to disturb it, as the
> rule proposed in 2008 would have done. Despite its admittedly
> sweeping language in points, the Final Ruling is not properly read
> to have moved the law in the opposite direction from that
> contemplated in the proposed rule, so as to tacitly change §
> 778.114 to preclude the FWW method in cases of performance-
> based bonuses. The Court, therefore, reads the Final Ruling as
> leaving in place the distinction between hours-based bonuses,
> which are incompatible with the FWW requirement of a "fixed
> weekly salary," and performance-based bonuses, which are not.

*Id.* at *14 (emphasis added).

The *Wills* court's reasoning is well-grounded.  If the DOL really wanted to change §

778.144 to prohibit commissions (and overrule several cases in the process), it knew how to do

so.  Thus, the DOL's decision **not to act**, did not—as Plaintiff suggests—change forty years of

precedent.  *See Smith,* 2011 WL 11528539, at *2 ("The Court is not persuaded that it should alter

its conclusion [that performance-based bonuses are permissible under the FWW] based on the

Department of Labor's explanation of its decision not to amend section 778.114.").  In fact, "[i]t

is doubtful that DOL can reverse the courts' uniform construction of the plain language of an

interpretive regulation without changing the text of that regulation, let alone without giving

notice of its intent to do so and an opportunity for comment."  *See Wills*, 2013 WL 5951078, at

*14

Although the *Wills* court focused primarily on bonuses, the court's reasoning applies

equally to sales-based commissions.  First, as the *Wills* court recognized, sales-based

commissions and performance-based bonuses are on similar legal footing.  *See id.* at \*12 (noting that commissions were a "technically distinct (although closely related) issue").  In fact, the *Wills* court relied, in part, on *Lance*—a case holding that commissions are permissible under the FWW—to show that "the only issue on the DOL's radar screen as of the time it proposed a clarifying amendment was the compatibility of time-based bonuses with the FWW method."  *Id*. Moreover, other courts have consistently analyzed commissions and performance-based bonuses the same way, often citing cases interchangeably.  *See e.g.*, *Brantley*, 821 F. Supp. 2d at 889-90 (distinguishing hours-based premium pay from "sales-based or production-based bonuses and commissions").  Finally, the *Wills* court's holding—that the DOL Final Ruling left intact the *status quo*—applies with equal force to sales-based commissions; courts have—long before 2011—uniformly held that commissions are permissible under the FWW.  *See Lance*, 2005 WL 1785315.  In fact, the DOL did not even mention sales-based commissions in either the NPRM or the Final Rule.  As such, the DOL's Final Rule does not compel a different result in this case.

The only court to reach a different conclusion misapplied the relevant facts and the law. *See Sisson v. Radioshack Corp.*, No. 1:12CV958, 2013 WL 945372 (N.D. Ohio March 11, 2013).  The *Sisson* court acknowledged that, prior to the 2011 Final Rule, both courts and the DOL uniformly permitted performance-based bonuses and commissions under the FWW method.  *Id.* at \*5-6.  As the *Wills* court detailed at length, however, the *Sisson* court incorrectly concluded that the DOL Final Rule changed that long-standing precedent.  First, the *Sisson* court read the DOL's Final Rule out-of-context.  *See Wills*, 2013 WL 5951078, at \*11 ("In explaining that decision, the DOL used broad language—which, taken out of context, can certainly be read, as the district court read it in *Sisson*, to preclude use of the FWW method where any form of bonus payment has been made. But the DOL's Final Ruling must be read in context.").

13

Moreover, unlike the *Wills* court—which performed a thorough analysis of the circumstances leading up to the 2011 Final Rule—the *Sisson* court merely quoted the Final Rule and summarily concluded that the DOL intended to change the law.  This copy-and-paste analysis, however, failed to adequately address the purpose behind the DOL's Final Rule.  Lastly, even if the Final Rule had purported to change the DOL's previous interpretive bulletin or Supreme Court precedent, the DOL's statement was not entitled to the *Chevron* deference the *Sisson* Court granted it.  Accordingly, the *Sisson* decision must be disregarded.

The *Sisson* court's subsequent actions reinforce that the decision lacks any persuasive authority.  Specifically, the court recently stayed its decision and granted the defendant's motion to certify the case for interlocutory appeal to the Sixth Circuit.  In a telling statement in its order staying the matter, the *Sisson* court noted that, "[t]he Court further holds that there is significant room for differing opinions based on the Court's own struggles with this issue and with the deference to be afforded the DOL's Final Rule."  (*See* Order (attached as Exhibit 1).)  In contrast to the well-reasoned *Wills* decision, the *Sisson* decision has no bearing on the 2011 Final Rule's effect, if any.

**C.**    **If the Final Rule, In Fact, Altered § 778.114, It Would Not Be Entitled to Any Deference**

As detailed above, the DOL Final Rule did not alter existing law or interpretations.  Regardless, even if the Final Rule could be read to have changed the DOL's interpretation concerning sales-based commissions, such a reading would render the Final Rule an unprincipled agency action and not entitled to any deference.  *Compare Wills*, 2013 WL 5951078, at *14-15; *Smith*, 2011 WL 11528539, at *2; *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 676 (7th Cir. 2010) *with Sisson,* 2013 WL 945372, at *5.

**1.**    ***Chevron* Deference Would Not Apply**

14

If the Final Rule has changed the interpretation—which GNC maintains that it did not—the Final Rule would not be entitled to Chevron deference. *Chevron*-deference only applies to official **regulations** promulgated pursuant to formal, notice-and-comment rule making. *See Urnikis-Negro*, 616 F.3d at 676 (citing U*.S. Freightways Corp. v. C.I.R.*, 270 F.3d 1137, 1141 (7th Cir. 2001)) ("[C]ourts give *Chevron* deference only to those regulations issued with full notice and opportunity for comment or like formalities; more informal statements of position receive a more flexible respect."); *see also Christopher v. SmithKline Beecham Corp*, 132 S.Ct. 2156, 2165 (2012)*.* In *Christensen v. Harris County*, the United States Supreme Court held that informal agency interpretations (*i.e.* not promulgated pursuant to "formal adjudication or notice-and-comment rulemaking"), such as opinion letters, policy statements, agency manuals, and enforcement guidelines, "lack the force of law" and "do not warrant *Chevron*-style deference." 529 U.S. 576, 587 (2000); *see also Reno v. Koray*, 515 U.S. 50, 61 (1995) (internal agency guideline, which is not "subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment," entitled only to "some deference" (internal quotation marks omitted)); *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 256–258 (1991) (interpretative guidelines do not receive *Chevron* deference); *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157 (1991) (interpretative rules and enforcement guidelines are "not entitled to the same deference as norms that derive from the exercise of the Secretary's delegated lawmaking powers").

Here, the DOL's so-called "Final Rule" is not a regulation; it is merely a statement in the Federal Register—issued without formal notice-and-comment—explaining why the DOL decided ***not*** to promulgate a new regulation. As such, the DOL's Final Rule is similar to an opinion letter or interpretative guideline, and is thus not entitled to *Chevron* deference. *See*

*Wills*, 2013 WL 5951078, at *14-15; *Smith*, 2011 WL 11528539, at *2.  In fact, the DOL's

underlying interpretive bulletin (29 C.F.R. § 778.114) also is not entitled to *Chevron* deference.

*See Urnikis-Negro*, 616 F.3d at 676; *see also O'Brien*, 350 F.3d at 286 n.15.  As the Seventh

Circuit noted in *Urnikis-Negro*, Section 778.114 was "among a number of rules comprising a

broader interpretive bulletin issued in 1968" but was "not issued pursuant to the usual notice and

rulemaking procedures used with formal regulations."  *Id.* at 676.  Thus, if the substantive

bulletin itself is not entitled to *Chevron* deference, the agency's interpretation of that bulletin is

surely not due *Chevron* deference.[3]

## 2.    *Auer* Deference Would Not Apply

Similarly, the Final Rule would not be entitled to deference under *Auer v. Robbins*, 519

U.S. 452 (1997).  Under *Auer*, courts sometimes defer to an agency's interpretation of its own

regulation.  *Auer* deference, however, is not warranted if the substantive regulation is

unambiguous, *see Christensen* 529 U.S. 576, or if the agency's current interpretation conflicts

with the agency's previous construction, *see Thomas Jefferson University v. Shalala*, 512 U.S.

504, 515 (1994) ("[A]n agency's interpretation of a statute or regulation that conflicts with a

prior interpretation is entitled to considerably less deference than a consistently held agency

view.") (internal citations and quotations omitted).

As an initial matter, the Final Rule does not interpret a regulation.  Section 778.114 was

only an interpretative bulletin issued to recognize the Supreme Court's earlier holding in *Missel*.

As a court recently held in dismissing a similar argument, "[t]he Department's interpretation of

*Missel* is not binding on the Court . . . although the Department's interpretation of its regulations

may be due some deference, the Court owes no deference to an agency's interpretation of a

---

[3] Similarly, Chevron deference is only appropriate when an agency issues a formal regulation interpreting an **ambiguous** statute.  *Chevron*, 467 U.S. at 842-43. The Supreme Court in *Missel*, however, held that the FWW complied with the plain, unambiguous language of the statute.  As such, *Chevron* deference is inappropriate.

Supreme Court decision." *Smith*, 2011 WL 11528539, at *1 (refusing to afford deference to the DOL's Final Rule). Accordingly, the Final Rule does not fit within the confines of *Auer*.

Moreover, the interpretive bulletin—§ 778.114—is not ambiguous. *See Wills*, 2013 WL 5951078, at *14. ("Given the courts' unanimous holdings that performance-based bonuses are consistent with § 778.114's requirement of a 'fixed salary requirement,' the DOL would have a hard time claiming that [the regulation is ambiguous].") In fact, the DOL conceded this point in the 2011 Final Rule, stating that, "on closer examination, the [DOL] is persuaded that the courts have not been unduly challenged in applying the current regulation to additional bonus and premium payments." *See* 76 Fed.Reg. at 18850.

In addition, even if the Final Rule could be read as changing the DOL's interpretation, such an "about-face"—as the *Sisson* court called it—would conflict with the long-accepted authority from both federal courts and the DOL that sales-based commissions and bonuses are permissible under the FWW method. As noted above, federal courts have uniformly held that sales-based commissions and bonuses are permissible under the FWW. Consistent with the court decisions, the DOL has not challenged the payment of sales-based commissions under the FWW method in the more than forty years since it issued § 778.114. Such inaction demonstrates that the DOL has interpreted *Missel* to permit the inclusion of sales-based commissions. *See Christopher*, 132 S.Ct. at 2159 ("Even more important, despite the industry's decades-long practice, the DOL never initiated any enforcement actions . . . or otherwise suggested that it thought the industry was acting unlawfully. The only plausible explanation for the DOL's inaction is acquiescence. Whatever the general merits of *Auer* deference, it is unwarranted here. The DOL's interpretation should instead be given a measure of deference proportional to its power to persuade.").

### 3.      **The Final Rule Would Have No Persuasive Authority**

The Final Rule would not even be entitled to the deference of being persuasive.

Although the DOL's "interpretation of its regulations may be due some deference, [a] Court

owes no deference to an agency's interpretation of a Supreme Court decision." *Smith*, 2011 WL

11528539, at *1 (refusing to afford deference to the DOL's Final Rule).  Furthermore, if the

DOL had actually flip-flopped on this issue—as Plaintiff suggests—then affording the Final Rule

any deference "would make a travesty of the principle of deference." *Sandifer v. United States

Steel Corp.*, 678 F.3d 590, 599 (7th Cir. 2012) (refusing to afford deference to agency

interpretation where the agency flip-flopped due to political considerations); *see also,

Christopher*, 132 S.Ct. at 2159.  Consequently, even misreading the Final Rule does not save

Plaintiff's claims.  GNC's pay practices comply with the FLSA.

### D.      **Plaintiff Also Fails to State A Claim Under the Massachusetts Minimum Wage Law**

Plaintiff also fails to state a claim under the Massachusetts Minimum Wage Law (the

"MMWL").  As the First Circuit has held, the MMWL's overtime provision is "essentially

identical to the FLSA," and the MMWL should be interpreted the same way as the FLSA.

*Valerio*, 173 F.3d at 40; *see also Goodrow v. Lane Bryant, Inc.*, 732 N.E.2d 289 (Mass. 2000).

Accordingly, the FWW method is permissible under both statutes.  *See id.*  Because Plaintiff's

claim fails under the FLSA, his MMWL claim also necessarily fails as a matter of law and

should be dismissed.

## V.      CONCLUSION

For the reasons stated above, Plaintiff's Complaint fails to state a claim on which relief

can be granted.  Accordingly, GNC respectfully moves this Court to the claims in Plaintiff's

Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

GENERAL NUTRITION CENTERS, INC.
and GENERAL NUTRITION CORP.,
By their attorneys,


/s/ Christopher S. Feudo
Robert A. Fisher, BBO # 643797
rfisher@foleyhoag.com
Christopher S. Feudo, BBO # 670499
cfeudo@foleyhoag.com
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 832-1000
Fax: (617) 832-7000

Christopher M. Michalik
Tyler S. Laughinghouse
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA  23219
(804) 775-4343
cmichalik@mcguirewoods.com
tlaughinghouse@mcguirewoods.com

Brad A. Funari
Pa. Id. No. 89575
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, Pennsylvania  15222
(412) 667-6000
bfunari@mcguirewoods.com

Dated: January 31, 2014

B4218015.1

<u>CERTIFICATE OF SERVICE</u>

I, Christopher S. Feudo, certify that on this 31st day of January 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to plaintiff by electronically serving his counsel of record.


*/s/ Christopher S. Feudo*
Christopher S. Feudo

B4218015.1